BUILDING COMPANY OF COHEN BROS., INC., Landlord, *v.* HARRY LEVY et al., Tenants.

Municipal Court of the City of New York, Borough of Brooklyn, Fourth District, October, 1923.

Landlord and tenant — city of New York — emergency housing laws — Laws of 1923, chapter 892, not applicable to new buildings in course of construction on September 27, 1920, or commenced thereafter — when landlord entitled to maintain summary proceedings — Civ. Pr. Act § 1410(1-a).

Prior to the enactment of chapter 892 of the Laws of 1923, the only purpose of which was to extend the protection of the emergency housing laws to tenants who went into possession after October 1, 1920, said emergency laws did not apply to a new building in the course of construction on September 27, 1920, or commenced thereafter, and it was so expressly provided in each of the rent laws which became effective on that date and in every amendment thereto.

The said statute of 1923 re-enacted section 1 of chapter 663 of the Laws of 1922, which substantially enumerated all of the emergency housing laws as theretofore amended, including section 1410(1-a) of the Civil Practice Act, extended their operation in full force and effect until the 15th day of February, 1924, and by way of amendment added to said statute of 1922 the following: " and shall be deemed to include and to apply with full force and effect to all tenancies and agreements and leases entered into or executed " after September 27, 1920. *Held*, that as the only purpose of the statute of 1923 was to extend the protection of the emergency housing laws to tenants who went into possession after October 1, 1920, said amendment did not operate to extend the application of the emergency housing laws including section 1410(1-a) of the Civil Practice Act, to buildings erected or completed since September 27, 1920.

Had the legislature intended to repeal the express provision in each of the emergency laws exempting from its application new buildings in the course of construction on September 27, 1920, or commenced thereafter, it would have expressed such purpose in explicit language.

Where, therefore, each of the tenants of an apartment house constructed in the city of New York after September 27, 1920, held over and continued in possession of his apartment after the expiration of his lease, without the permission of the landlord, summary proceedings to remove the tenants will lie.

SUMMARY PROCEEDINGS to remove tenants from premises occupied for dwelling purposes.

*Isidore Kayfetz*, for landlord.

*Benjamin Schlaff*, for tenants.

LAW, J.   These are summary proceedings to remove the tenants on the ground that they hold over and continue in possession after the expiration of their respective terms without the permission of the landlord.   The facts are not in dispute.   Each of the tenants is in possession of his apartment, which he occupies for dwelling purposes, under a written lease the term of which expired September 30, 1923.   The building containing these apartments was constructed subsequent to September 27, 1920.   Subdivision 1-a of section 1410 of the Civil Practice Act provides in substance that the proceeding here sought to be maintained shall not be maintainable to recover possession of real property occupied for dwelling purposes, except in certain specified contingencies.   This subdivision constitutes a part of the so-called emergency housing laws.   The landlord does not claim to come within any of the exceptions named in the emergency statute above referred to.   Hence he is not entitled to recover possession of the apartments if the provisions of the said subdivision of the Civil Practice Act are now applicable under the facts in this case.

There is no question that prior to the enactment of chapter 892 of the Laws of 1923, hereinafter referred to, the emergency housing laws in general, and subdivision 1-a of section 1410 of the Civil

Practice Act specifically, did not apply to a new building in course of construction on September 27, 1920, or commenced thereafter. This was expressly provided in each of the several statutes which became effective September 27, 1920, and in each and every subsequent amendment thereof. It is claimed, however, by these tenants that said chapter 892 of the Laws of 1923 operates to extend the application of the emergency housing laws, including subdivision 1-a of section 1410 of the Civil Practice Act, to all buildings occupied for dwelling purposes now in existence.

The new act amends section 1 of chapter 663 of the Laws of 1922 which enumerated substantially all of the emergency housing laws as theretofore amended, including said subdivision 1-a of section 1410 of the Civil Practice Act, and extended their operation in full force and effect until the 15th day of February, 1924. The said chapter 892 of the Laws of 1923 re-enacts section 1 of chapter 663 of the Laws of 1922 and, by way of amendment, adds thereto the following words: " and shall be deemed to include, and to apply with full force and effect to all tenancies, agreements and leases entered into or executed subsequent to the twenty-seventh day of September, nineteen hundred and twenty."

Did this amendment operate to extend the application of the emergency housing laws to new buildings erected or completed since September 27, 1920? The question gains in significance by the apparent fact that the governor of the state, without whose approval the proposed amendment could not have become law, was advised, or at least believed, that such would be its effect and his approval of the measure was seemingly based upon that understanding. In a communication addressed to the commission of housing and regional planning, as published in the newspapers of October 15, 1923, the governor said: " In 1922 these laws were extended so that they would not expire until February, 1924. At the last session of the legislature several attempts were made to extend them still further. A bill was also presented at the last session of the legislature extending the benefits of these laws to cover houses built since 1920, as the effect of the original laws was interpreted by the courts to cover only houses existing in 1920.

" This bill, extending the benefits of the rent emergency laws to houses of later construction, was passed by the legislature and approved by me, and now the rent emergency laws apply to all tenement houses now in existence."

The governor's statement that " the effect of the original laws was interpreted by the courts to cover only houses existing in 1920 " is erroneous. Each emergency statute clearly and expressly provided that it should not apply " to a new building in course of

construction on September twenty-seventh, nineteen hundred and twenty, or commenced thereafter." The language employed to express the legislative will was so free from ambiguity as to leave no opportunity for construction by the courts. In fact there never was any such interpretation by the courts. The Appellate Division of the Supreme Court, first department, did interpret the emergency laws to apply only to tenants in possession on October 1, 1920. *Farnham Realty Corporation* v. *Posner*, 200 App. Div. 827; *Silkman* v. *Schwartz*, 193 N. Y. Supp. 793. The buildings involved in the above-cited cases were completed prior to September 27, 1920. The sole question determined by the court was whether a tenant living in a building completed prior to September 27, 1920, but who went into possession after October 1, 1920, was entitled to the protection of the emergency housing laws. The status of a tenant living in a house completed after September 27, 1920, was not involved at all. The court held only that the emergency the legislature had in mind in enacting the housing laws was the emergency as it existed on October 1, 1920.

In a later case the Appellate Term of the Supreme Court, second department, declined to follow the ruling of the Appellate Division, first department, and held that a tenant going into possession after October 1, 1920, was entitled to the protection of the housing laws; but this decision also related to a building completed prior to September 27, 1920. *Marion* v. *Weiser*, 119 Misc. Rep. 412.

Thus was created the anomalous situation in which as to buildings completed prior to September 27, 1920, the courts in one department were extending the benefits of the emergency laws to tenants who went into possession after October 1, 1920, and in the other department were withholding the benefits of those laws from the same class of tenants. The question then is presented whether by the amendment contained in chapter 892 of the Laws of 1923, the legislature intended merely to overcome the unfortunate effect of this conflict of court rulings, or whether it intended to extend the operation of the emergency laws to all buildings now in existence. Did the legislature intend merely to nullify the ruling of the Appellate Division, first department, or did it intend to, by implication, repeal the express provisions of the emergency statutes that they should not apply to new buildings in course of construction on September 27, 1920, or commenced thereafter?

The purpose of the exemption from the application of the emergency laws granted to new buildings was to encourage housing construction. It was in the interest of tenants and was an integral part of the legislative program for emergency relief. It discriminated against landlords of existing houses. It recognized the

obvious fact that permanent relief could come only as a result of increased construction of new buildings. It offered an inducement to builders to construct new houses. It met the objection that the emergency laws would discourage building operations and thus seriously retard the ultimate solution of the emergency problem. By providing the exemption the legislature gave virtual assurance to those desiring to engage or invest in building operations, that all buildings in course of construction on September 27, 1920, or commenced thereafter, would be free of the burden of the emergency laws. This was an inducement, presumably offered in good faith. In reliance upon the good faith of that inducement, many millions of dollars have been expended in the construction of new buildings. To now extend the operations of the emergency laws, not merely to buildings to be erected in the future, but to those that have been erected since September 27, 1920, would obviously be an act of bad faith on the part of the legislature. The courts, by a doubtful construction, will not impute to the legislature an intent to act in bad faith. *People ex rel. Interborough R. T. Co.* v. *Tax Commissioners,* 126 App. Div. 610; affd., 195 N. Y. 618; *People ex rel. Roosevelt Hospital* v. *Raymond,* 194 id. 189.

The inference is irresistible that if the legislature had intended to repeal the express provision in each of the emergency laws exempting from its application new buildings in the course of construction on September 27, 1920, or commenced thereafter, it would have expressed its purpose in explicit language. The conclusion is equally irresistible that the only purpose the legislature had in mind was to overrule the decisions hereinbefore cited, of the Appellate Division of the Supreme Court, first department, and thus to extend the protection of the emergency laws to tenants who went into possession after October 1, 1920.

Accordingly, judgment is for the landlord in each case.

Judgment accordingly.